# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS; STATE OF NEW YORK; STATE OF COLORADO; PEOPLE OF THE STATE OF CALIFORNIA; STATE OF ARIZONA; STATE OF CONNECTICUT; STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; COMMONWEALTH OF VIRGINIA; STATE OF WASHINGTON; and STATE OF WISCONSIN, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF EDUCATION and LINDA McMAHON, in her official capacity as SECRETARY OF THE U.S. DEPARTMENT OF EDUCATION, <br><br> Defendants. | Case No. 1:25-cv-13244 |

**PLAINTIFF STATES' REPLY MEMORANDUM
IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND
IN OPPOSITION TO DEFENDANTS' CROSS-MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................................iii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

    I.    The Court Has Jurisdiction. ................................................................................. 1

    II.   The Final Rule Violates the Administrative Procedure Act. ................................. 6

        A.    The Final Rule is Contrary to Law and Exceeds Statutory Authority............................ 6

            1.    The Rule Contradicts the Plain Language of the PSLF Statute. ................................. 6

            2.    ED Has No Valid Authority for Promulgating the Rule. .......................................... 10

        B.    The Rule is Arbitrary and Capricious. ........................................................................ 12

    III.   The Final Rule Should Be Vacated. ............................................................................ 18

CONCLUSION.............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. All. for Equal Rights v. Raoul*,
795 F. Supp. 3d 1073 (N.D. Ill. 2025) ............................................................................... 4

*Am. Pub. Health Ass'n v. Nat'l Institutes of Health*,
145 F.4th 39 (1st Cir. 2025) ............................................................................................ 20

*Ass'n of Am. Universities v. Dep't of Def.*,
806 F. Supp. 3d 79 (D. Mass. 2025) ............................................................................... 19

*Atl. Richfield Co. v. Christian*,
590 U.S. 1 (2020) .............................................................................................................. 8

*Barton v. Barr*,
590 U.S. 222 (2020) .......................................................................................................... 8

*Can. Ass'n of Petroleum Producers v. FERC*,
254 F.3d 289 (D.C. Cir. 2001) ....................................................................................... 13

*Cent. United Life Ins. Co. v. Burwell*,
827 F.3d 70 (D.C. Cir. 2016) .......................................................................................... 10

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) ........................................................................................................ 19

*CoxCom, Inc. v. Chaffee*,
536 F.3d 101 (1st Cir. 2008) ............................................................................................ 2

*Ctr. for Biological Diversity v. Bureau of Land Mgmt.*,
422 F. Supp. 2d 1115 (N.D. Cal. 2006) ......................................................................... 18

*Duncan v. Walker*,
533 U.S. 167 (2001) .......................................................................................................... 9

*Fischer v. United States*,
603 U.S. 480 (2024) .......................................................................................................... 9

*Gailius v. I.N.S.*,
147 F.3d 34 (1st Cir. 1998) ............................................................................................ 19

*Harrington v. Chao*,
280 F.3d 50 (1st Cir. 2002) ............................................................................................ 19

iii

*In re Dep't of Just. Admin. Subpoena No. 25-1431-030*,
No. 25-MC-00063-SKC-CYC, 2026 WL 33398 (D. Colo. Jan. 5, 2026) ............................................... 4

*King v. Burwell*,
576 U.S. 473 (2015) .........................................................................................................................11-12

*Lamie v. U.S. Tr.*,
540 U.S. 526 (2004) .............................................................................................................................. 8

*Littlefield v. Mashpee Wampanoag Indian Tribe*,
951 F.3d 30 (1st Cir. 2020) ................................................................................................................7-8

*Littlefield v. U.S. Dep't of the Interior*,
85 F.4th 635 (1st Cir. 2023) ............................................................................................................... 15

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ........................................................................................................................ 8, 10

*Lopez-Soto v. Hawayek*,
175 F.3d 170 (1st Cir. 1999) ............................................................................................................... 12

*Marx v. Gen. Revenue Corp.*,
568 U.S. 371 (2013) .............................................................................................................................. 8

*Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urban Dev.*,
496 F. Supp. 3d 600 (D. Mass. 2020) ................................................................................................... 5

*Mass. v. Nat'l Institutes of Health*,
770 F. Supp. 3d 277 (D. Mass. 2025) .................................................................................................. 19

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .............................................................................................................................. 3

*Mobil Oil Expl. & Producing S.E. Inc. v. United Distrib. Cos.*,
498 U.S. 211 (1991) .........................................................................................................................14-15

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ..........................................................................................................................13-14

*Murthy v. Missouri*,
603 U.S. 43 (2024) ................................................................................................................................ 2

*N.H. Lottery Comm'n v. Rosen*,
986 F.3d 38 (1st Cir. 2021) .........................................................................................................1-3, 5-6

*Pugin v. Garland*,
599 U.S. 600 (2023) .............................................................................................................................. 8

*R.I. Latino Arts v. Nat'l Endowment for the Arts*,
  800 F. Supp. 3d 351 (D.R.I. 2025) ....................................................................................... 5

*Rhode Island v. Trump*,
  810 F. Supp. 3d 283 (D.R.I. 2025) ..................................................................................... 19

*Rimini St., Inc. v. Oracle USA, Inc.*,
  586 U.S. 334 (2019) ............................................................................................................. 8

*Ryan v. U.S. Immigration & Customs Enf't*,
  974 F.3d 9 (1st Cir. 2020) .................................................................................................. 11

*Saget v. Trump*,
  375 F. Supp. 3d 280 (E.D.N.Y. 2019) ............................................................................... 15

*Santana v. Holder*,
  731 F.3d 50 (1st Cir. 2013) ................................................................................................ 12

*Sierra Club v. EPA*,
  294 F.3d 155 (D.C. Cir. 2002) ........................................................................................... 11

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ............................................................................................................. 5

*Trump v. CASA, Inc.*,
  606 U.S. (2025) .................................................................................................................. 20

*U.S. Postal Serv. v. Konan*,
  146 S. Ct. 736 (2026) ....................................................................................................... 6, 8

*United States v. Abdelaziz*,
  68 F.4th 1 (1st Cir. 2023) .................................................................................................... 7

*United States v. Colorado*,
  No. 1:25-cv-01391-GPG-KAS, (D. Colo. Sept. 24, 2025) .................................................. 4

*United States v. Illinois*,
  No. 1:25-cv-01285, (N.D. Ill. Feb. 6, 2025) ....................................................................... 4

*United States v. Minnesota*,
  No. 0:26-cv-00273, (D. Minn. Jan. 14, 2026 ) .................................................................... 4

*United States v. New Jersey*,
  No. 3:26-cv-01770, (D.N.J. Feb. 23, 2026) ........................................................................ 4

*United States v. New York*,
  810 F. Supp. 3d 329 (N.D.N.Y. Nov. 17, 2025) .................................................................. 4

*United States v. Texas*,
    599 U.S. 670 (2023) ...................................................................................................19-20

*Virginia v. Am. Booksellers Ass'n, Inc.*,
    484 U.S. 383 (1988) ..........................................................................................................3

*Wis. Cent. Ltd. v. United States*,
    585 U.S. 274 (2018) ..........................................................................................................9

## Federal Statutes

5 U.S.C.
    §§ 551(13) ......................................................................................................................19
    § 706(2) ......................................................................................................................18-20

18 U.S.C.
    § 2331 ............................................................................................................................16
    § 2339A–B ......................................................................................................................16

20 U.S.C.
    § 1082(a)(1) ....................................................................................................................11
    § 1087e(m)(3)(B) ............................................................................................................6
    § 3474 ............................................................................................................................11
    §§ 1091(a)(6) ..................................................................................................................9
    §§ 1078-2(a)(1)(B) ..........................................................................................................9
    §§ 1094(a)(16) ................................................................................................................9
    §§ 1221e-3 ....................................................................................................................11
    §§ 3441(a)(2)(C) ............................................................................................................11
    §§ 3471(a) ....................................................................................................................11

25 U.S.C.
    § 5129 ..............................................................................................................................7

Pub. L. 96-88
    §§ 301, 411 ....................................................................................................................11

## Federal Regulations

34 C.F.R.
    § 685.219(i)(1)(ii) ..........................................................................................................16

90 Fed. Reg. at 40169 ..........................................................................................................2

90 Fed. Reg. at 40170 ......................................................................................................2-3

90 Fed. Reg. at 48967 ..................................................................................................11, 15

90 Fed. Reg. at 48970 ......................................................................................................1-2

90 Fed. Reg. at 48983 ................................................................................................................ 16

90 Fed. Reg. at 48994 ................................................................................................................ 18

90 Fed. Reg. at 48995 ..............................................................................................................2-3, 8

**Miscellaneous Authorities**

Mila Sohoni, *The Past and Future of Universal Vacatur*, 133 Yale L.J. 2305, 2313, 2323 (2024) ........... 20

**INTRODUCTION**

The challenged Rule, which will go into effect on July 1 absent Court intervention, claims for the Department of Education (ED) the sweeping authority to police every federal, state, and local government agency and every non-profit organization in the country for purportedly unlawful conduct in an effort to advance the Administration's policy priorities. Rather than confront the administrative law questions at the heart of this lawsuit—ED's authority to promulgate the Rule and whether the Rule is arbitrary and capricious—Defendants first make baseless jurisdictional arguments and then proceed to make circular arguments on the merits. The Court has jurisdiction, not only because enforcement against Plaintiff States ("the States") is far from speculative, but also because the Rule directly impacts the States' recruitment and retention of talented public servants, consistent with ED's stated purpose of the Rule: "serv[ing] as a deterrent for borrowers" seeking public service employment. 90 Fed. Reg. at 48970. Defendants do not offer much of substance to defend against the merits of the States' claims. In defense of their claimed authority to promulgate the Rule notwithstanding Congress's clear direction, Defendants offer a convoluted statutory interpretation relying on an improper invocation of the "canon against surplusage" that contravenes precedent and basic administrative law. And Defendants offer little to support their claim that the Rule is reasonable and reasonably explained, instead largely regurgitating the language in the Rule's Preamble. Accordingly, the States respectfully request that the Court grant their motion for summary judgment; deny Defendants' cross-motion; and vacate the Rule.

**ARGUMENT**

I.    **The Court Has Jurisdiction.**

Whether attacking ripeness or standing, Defendants' arguments that this Court lacks jurisdiction over the States' claims all fail for similar reasons. *See N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 52 (1st Cir. 2021) ("In the pre-enforcement context . . . the doctrines of standing and

1

ripeness tend to overlap."). First, the Rule's harm to the States' ability to recruit and retain qualified employees means that the States have "suffered, or will suffer" a "concrete, particularized, and actual or imminent" injury "fairly traceable to the challenged action and redressable by a favorable ruling" as required for standing. *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (cleaned up). Second, and independently, the States face a clear threat of enforcement that "suffice[s] as an imminent Article III injury in fact." *N.H. Lottery Comm'n*, 986 F.3d at 50 (cleaned up). Third, resolution of the States' "purely legal" claims does not "depend[] upon facts that may not yet be sufficiently developed"; and the challenged Rule "creates a direct and immediate dilemma" for the States. *Id.* at 53.

Defendants concede that employers such as the States may be "affected" by the Rule in the form of harms to recruitment and retention, such as "difficulty recruiting employees" and "their employees . . . seeking alternative employment." Final Rule, 90 Fed. Reg. at 48995; *see* NPRM, 90 Fed. Reg. at 40170. Indeed, as ED states time and again, the point of the Rule is its "deterrent effect"—that is, a chilling effect on employee and employer conduct. *See, e.g.*, Final Rule, 90 Fed. Reg. at 48970 ("The Department agrees that this final rule will serve as a deterrent for borrowers . . . and believes that kind of deterrence is appropriate. . ."). Thus, contrary to Defendants' assertion, Doc No. 99 at 7, the Rule will impact the States' ability to recruit and retain quality employees. This injury exists even before Defendants take action—the mere threat of enforcement, amplified by the Rule's ambiguity, deprives the States of a crucial recruiting tool that Defendants themselves recognize as a "significant factor" for individuals deciding whether to pursue a career with public service employers such as the States. NPRM, 90 Fed. Reg. at 40169. Such "particularized future economic injury . . . , though latent, nonetheless qualifies as imminent" for Article III injury-in-fact purposes. *CoxCom, Inc. v. Chaffee,* 536 F.3d 101, 107 (1st Cir. 2008) (cleaned up).

Independently, the States have standing and ripe claims due to the "threat of enforcement." *Contra* Doc No. 99 at 7. Defendants argue that any determination to strip an entity of its PSLF employer status will be "objective" and involve a "multi-step enforcement process." Doc No. 99 at 8. More sweepingly, Defendants assert that the States' claims are merely "hypothetical" and thus cannot be reached by this Court "[u]ntil the Department issues a final decision finding that a Plaintiff is ineligible for PSLF." Doc No. 99 at 11. But this contravenes well-established precedent that "where threatened action by *government* is concerned, [courts] do not require . . . plaintiff[s] to expose [themselves] to liability before bringing suit to challenge the basis for the threat." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) (cleaned up). Here, the clear threat of enforcement of the Rule against the States "suffice[s] as an imminent Article III injury in fact" and "'enforcement action is not a prerequisite to challenging the law.'" *N.H. Lottery Comm'n*, 986 F.3d at 50 (cleaned up) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

In any event, Defendants are wrong to claim that there is no "indication that any of the Plaintiffs . . . will be (or are likely to be) the target of any enforcement activity" and that the States face no enforcement threat if they "abide by Federal law." Doc No. 99 at 7, 9. To start, the Rule is "aimed directly at plaintiffs" as employers who rely on PSLF for their talent recruitment and retention. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988). Indeed, Defendants even acknowledge the Rule's disproportionate harm to the States, admitting that employers in "governance," "K-12 education, and higher education" "are more likely to be affected than others." Final Rule, 90 Fed. Reg. at 48995; NPRM, 90 Fed. Reg. at 40170. And to suggest that there is no dispute between the Plaintiff States and the current Administration over the bounds of lawful conduct in the areas of immigration, transgender healthcare for minors, and the other policy issues specifically identified in the Rule, is belied by reality: this Administration routinely sues Plaintiff

3

States, alleging that the Plaintiff States are committing the very same legal violations that Defendants would rely on under the Rule, for example, on the basis that lawful state statutes "violate" the Immigration and Nationality Act and "facilitate [individuals'] evasion of federal immigration law," *United States v. Colorado,* No. 1:25-cv-01391-GPG-KAS, ECF No. 52 at 2, 31 (D. Colo. Sept. 24, 2025).[1] While the States disagree that their conduct is unlawful,[2] Defendants' claims about the lack of any enforcement threat ring hollow.

Similarly unpersuasive is Defendants' suggestion that the States do not face the threat of enforcement because the Rule "disavows that *certain* employers—*similar* to Plaintiffs" will be subject to exclusion under the Rule. Doc No. 99 at 8–9 (emphasis added). Tellingly, Defendants have not disavowed enforcement against state government employers. To the contrary, Defendants refuse to offer the sort of "unambiguous disclaimer of coverage, which can undermine standing in pre-enforcement cases" and "must proffer more than a conclusory assertion of inapplicability" to

---

[1] *See, e.g.*, *United States v. New Jersey*, No. 3:26-cv-01770, ECF No. 1 ¶ 72 (D.N.J. Feb. 23, 2026) (alleging that New Jersey unlawfully "impede[s] the federal immigration agents' ability to engage in civil immigration enforcement according to the laws of the United States"); *United States v. Minnesota*, No. 0:26-cv-00273, ECF No. 1 at *1 (D. Minn. Jan. 14, 2026) (alleging that "Minnesota law requires the state to discriminate against its current and prospective employees on the basis of race and sex."); *United States v. Illinois*, No. 1:25-cv-01285, ECF No. 1 ¶ 6 (N.D. Ill. Feb. 6, 2025) (alleging that Illinois state law reflects an "intentional effort to obstruct the Federal Government's enforcement of federal immigration law").

[2] *See, e.g.*, *United States v. New York*, 810 F. Supp. 3d 329, 351 (N.D.N.Y. Nov. 17, 2025) (granting motion to dismiss United States' lawsuit against New York and finding that "New York's permissible decision not to assist federal immigration enforcement in its endeavors" was not illegal); *Am. All. for Equal Rights v. Raoul*, 795 F. Supp. 3d 1073, 1088–89 (N.D. Ill. 2025) (granting motion to dismiss United States's intervention complaint against Illinois for lack of standing and finding underlying claims not likely to succeed on the merits); *cf. In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, No. 25-MC-00063-SKC-CYC, 2026 WL 33398, at *7– 11 (D. Colo. Jan. 5, 2026) (quashing United States's administrative subpoena and finding that the "the government's aim" was to use enforcement as "a smokescreen for its true objective of pressuring pediatric hospitals into ending gender-affirming care through commencing vague, suspicionless 'investigations'" even though "Colorado law makes such care legal").

4

demonstrate that no credible threat of prosecution exists. *N.H. Lottery Comm'n*, 986 F.3d at 52 (cleaned up).

Finally, the remaining ripeness factors favor the States. The States' claims are fit for judicial resolution as they do not "depend[] upon facts that may not yet be sufficiently developed." *Id.* at 52–53. Defendants' attempts to characterize them as "contingent on future events" notwithstanding, Doc No. 99 at 11, the States' claims are "purely legal, and will not be clarified by further factual development." *Susan B. Anthony List*, 573 U.S. at 167 (cleaned up); *see R.I. Latino Arts v. Nat'l Endowment for the Arts,* 800 F. Supp. 3d 351, 370 (D.R.I. 2025) (holding that challenge to whether agency acted in excess of statutory authority and arbitrarily and capriciously under the APA "is a purely legal question"); *Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 496 F. Supp. 3d 600, 609 (D. Mass. 2020) (holding this type of legal challenge "is presumptively reviewable, *i.e.*, ripe" (cleaned up)). The States must also weigh the risk of "openly engaging in" conduct the Rule designates as disqualifying for PSLF eligibility, even when that conduct is legal in their jurisdictions, against the devastating prospect of losing PSLF as a recruitment and retention tool. *N.H. Lottery Comm'n*, 986 F.3d at 51. The Rule thus "creates a direct and immediate dilemma" for the States. *Id.* at 53 (cleaned up).

At bottom, Defendants want to have it both ways: they promulgated a Rule with sweeping nationwide effect on every government agency and nonprofit entity to chill employer and employee conduct that contravenes the President's policy priorities, to the detriment of public employers like the Plaintiff States. Now, when challenged in Court, they argue that any individual employer's harm is speculative and they should be allowed to leave the Rule hanging over employers' heads for an indefinite time frame. *See id.* ("[W]e cannot see why the plaintiffs should be forced to sit like Damocles while the government draws out its" enforcement).

## II.    The Final Rule Violates the Administrative Procedure Act.

### A.  The Final Rule is Contrary to Law and Exceeds Statutory Authority.

#### 1.  The Rule Contradicts the Plain Language of the PSLF Statute.

Defendants' primary argument, *see* Doc No. 99 at 12–16, is that the Rule is authorized by the "statutory text and purpose" of 20 U.S.C. § 1087e(m)(3)(B), the very same statutory provision that defines a "public service job" to include any "full time job in . . . government." Defendants correctly note that the statutory definition of "public service job" contains over a dozen categories of jobs that can sometimes overlap: for example, some jobs in "public education" are also jobs in "government." Doc No. 99 at 14–15. But then their argument falters, as they assert that the best way to "make[] sense of these overlapping categories" is to divine from them the (wholly unstated) Congressional intent to "'broadly ensure that' only those 'professions that advance the public interest were included in the list.'" *Id.* at 14 (quoting Final Rule, 90 Fed. Reg. at 48972). From there, Defendants claim, Congress authorized ED to promulgate the Rule because "Congress would not want PSLF benefits to be received by employees of organizations that the Department knows are not serving the public interest." *Id.* (quoting Final Rule, 90 Fed. Reg. at 48972).

Defendants' statutory interpretation is flawed at every turn. First, Defendants ignore binding authority—including the Supreme Court's decision just weeks ago—that the best way to interpret a statute with "overlapping terms" is the same way to interpret every other statute, that is, to look for its "ordinary meaning." *U.S. Postal Serv. v. Konan*, 146 S. Ct. 736, 746 (2026). As the States detail, and Defendants do not meaningfully dispute, the plain meaning of the PSLF Statute is clear: all "full-time job[s] in . . . government" are eligible for PSLF, except one, "time served as a member of Congress." 20 U.S.C. § 1087e(m)(3)(B); Doc No. 94 at 12–14; *see* Doc No. 99 at 14. Defendants do not engage with the States' textual or interpretive arguments, including that the PSLF Statute has mandatory language, Doc No. 94 at 12; that Congress's definition

6

unequivocally delineates PSLF eligibility, *id.*; that Congress's lone exception underscores that it intended no others, *id.* at 13; that years of consistent interpretation support the States' view, *id.* at 17; and that all legislative history does too, *id.* "Under the commands of the Supreme Court, a statute that does not contain conflicting provisions or ambiguous language," like the PSLF Statute here, "does not require a narrowing construction or application of any other canon or interpretative tool." *Littlefield v. Mashpee Wampanoag Indian Tribe*, 951 F.3d 30, 40 (1st Cir. 2020) (cleaned up). By contrast, Defendants offer no textual argument at all that supports their reading of the Statute. Nor could they, as neither the words nor the concept of "substantial illegal purpose," nor *any* authority for ED to exclude employers, appears in the text of the PSLF Statute.

Second, Defendants' premise that the categories in the PSLF Statute are "surplusage" because they could, under some circumstances, be duplicative contravenes precedent. Doc No. 99 at 14 (quotation omitted). In *Littlefield*, the First Circuit considered a federal statute's definition of the term "Indian," which has three separate categories, akin to the categories in the PSLF Statute's "public service job" definition. 951 F.3d at 33 (interpreting 25 U.S.C. § 5129). The court interpreted the ordinary meaning of the statute and found that even though the statutory categories contained substantial overlap, none were surplusage because there were "some people" who might qualify under one provision but not another. *Id.* at 37–38 (stating that merely a "possibility" is required and emphasizing that "whether such a scenario is likely . . . is not the test"); *see also United States v. Abdelaziz*, 68 F.4th 1, 23 (1st Cir. 2023) (rejecting surplusage argument where two statutory terms "happen to refer to the same entity"). The categories in the PSLF Statute are likewise not surplusage: for example, a job at a public charter school may be "public education" but not "government," and certain physician jobs are "public health," but not employment in "government" or at a 501(c)(3) non-profit, but are nonetheless PSLF eligible.

Third, as the Supreme Court has recognized, Congress often intentionally uses statutory terms "in an overlapping manner" in order to "better" effectuate its purpose, *Konan*, 146 S. Ct. at 746, or to be "doubly sure[,]" *Pugin v. Garland*, 599 U.S. 600, 609 (2023). As a result, "the better overall reading of the statute sometimes contains some redundancy." *Id.*; *Littlefield*, 951 F.3d at 38 ("Even if there were some redundancy, that would not alter the plain meaning. The Supreme Court has recently reminded us that Congress sometimes builds redundancy into statutes.").[3]

Fourth, any asserted redundancy "is not a license to rewrite or eviscerate" the PSLF Statute "contrary to its text"—exactly what Defendants seek here, despite their protestation. *Barton*, 590 U.S. at 239; *contra* Doc No. 99 at 13. Defendants' asserted interpretation does not solve the redundancy they identify. *See Marx*, 568 U.S. at 385 (explaining that the "canon against surplusage assists only where a competing interpretation gives effect to every clause and word of a statute"). Any redundancy in the categories of "public service job" serves to make one job doubly eligible for PSLF: a public school teacher, for example, may be PSLF-eligible under both the "government" category and the "public education" category. But, according to Defendants, Congress's considered decision to *include* both those terms in the statute gives ED the authority to *exclude* jobs that meet both of them. *See* Final Rule, 90 Fed. Reg. at 48995 (listing "K-12 education" as one of the "areas that could be most affected by the" Rule). Defendants' roundabout interpretation cannot possibly be the "best" one, as it must be under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 408 (2024).[4]

---

[3] *See also Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020); *Barton v. Barr*, 590 U.S. 222, 239 (2020); *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019); *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013); *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004).

[4] Defendants plainly cannot clear the even higher bar that they must here, as the constitutional concerns implicated by ED's sweeping assertion of authority require Congress to have spoken clearly. Doc No. 94 at 17–18.

Fifth, and finally, Defendants cannot "rewrite" the PSLF Statute based on "speculation" about Congressional intent. *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 282 (2018); *accord* Doc No. 94 at 18–19. But that is the whole basis of Defendants' purported statutory interpretation—Defendants speculate about "Congressional will," Doc No. 99 at 13; "presume" what Congress would or "would not want," *id.* at 16; and hypothesize about Congressional "purpose," *id.* at 13, 14, 15.

None of the cases Defendants cite remotely support their implausible interpretation. In *Duncan v. Walker*, 533 U.S. 167, 174 (2001), *see* Doc No. 99 at 14, the Supreme Court found that the statutory phrase "State post-conviction or other collateral review" did not include federal habeas corpus petitions, noting that in other provisions "Congress specifically used both the words 'State' and 'Federal'" and explaining that "where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* at 172–74 (cleaned up). *Duncan* supports the States here. As the States explained, *see* Doc No. 94 at 17, and Defendants ignored, other provisions of the HEA—but *not* the PSLF Statute—authorize ED to exclude from the federal student loan program students and schools that have "been convicted of, or ha[ve] pled nolo contendere or guilty to" certain crimes. 20 U.S.C. §§ 1091(a)(6), 1078-2(a)(1)(B), 1094(a)(16). "[H]ad Congress intended to include" a similar exclusion for PSLF employers, it "would have mentioned [it] expressly." *Duncan*, 533 U.S. at 172. And Defendants misapply the "*noscitur a sociis*" canon, *see* Doc No. 99 at 13 (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)), which "teaches that a word is given more precise content by the neighboring words with which it is associated," *Fischer v. United States*, 603 U.S. 480, 487 (2024). Defendants do not

9

explain which term it asserts is broad, which neighboring terms it claims are narrow, or how those terms would support its interpretation.

### 2. ED Has No Valid Authority for Promulgating the Rule.

Defendants sidestep the critical administrative law principle at the heart of this lawsuit: an agency cannot possibly have the authority to define a term in a regulation differently than Congress defined it in statute. Defendants concede, as they must, that the Rule purports to "regulat[e] the meaning of 'public service job.'" Doc No. 99 at 16; *see also id.* at 13, 15 (similar). Defendants nonetheless assert that ED has authority to do so, because "Congress was not required to expressly provide how the PSLF program would be administered in all instances." Doc No. 99 at 15. But that ignores the actual problem here. Congress *did* "formulate specific rules" governing the precise question at issue in this case: which jobs are "public service job[s]" that are eligible for PSLF? *See id.* (quoting *Am. Power & Light Co. v. Sec. & Exch. Comm'n*, 329 U.S. 90, 105 (1946)); *Cent. United Life Ins. Co. v. Burwell*, 827 F.3d 70, 73 (D.C. Cir. 2016) ("[It is] accurate—and fatally so—to say [the] rule proposed to 'amend' the [statute] itself.").

As the States explained, Congress's definition of "public service job" "leaves 'no room for agency interpretation.'" Doc No. 94 at 13 (quoting *Duffus v. MaineHealth*, 791 F. Supp. 3d 61, 81 (D. Me. 2025)). That is not only because the statutory text itself is clear, *see supra* II.A.1; Doc No. 94 at 12–14, but also because the clear statutory text forecloses any argument that Congress intended to delegate discretion to ED to answer that question, Doc No. 94 at 14–16. Defendants ignore the bevy of cases setting forth the requirements for express or implied Congressional delegation to an agency. *See id*. Defendants have not pointed to any statutory language that would indicate express delegation (like "as defined by regulations which the Commission shall promulgate") or implied delegation ("appropriate" or "reasonable"). *Loper Bright*, 603 U.S. at 395 & nn.5–6 (quotations omitted); Doc No. 94 at 15. This position cannot be squared with the

10

"bedrock principle that the power of an executive agency administering a federal statute is authoritatively prescribed by Congress." *Ryan v. U.S. Immigration & Customs Enf't*, 974 F.3d 9, 19 (1st Cir. 2020) (cleaned up).[5]

Defendants' claim that the general rulemaking provisions of the HEA give ED "broad authority" to promulgate the Rule, Doc No. 99 at 12, is wrong for the same reason. No generic authority could give an agency license to redefine a term defined by statute. But it is also wrong because, as the States argue (and Defendants have not contested), those generic provisions do not bestow any authority to promulgate regulations except where *otherwise* authorized by statute. *See* Doc No. 94 at 18; 20 U.S.C. §§ 1221e-3 (rulemaking authority "to carry out functions otherwise vested in the Secretary"); § 1082(a)(1); § 3474 (similar).[6] No such other statute exists.

Defendants claim that the Rule is consistent with "long-standing government practice" like the IRS's illegality doctrine, Doc No. 99 at 17, apparently backing off their prior view that that doctrine "serves as a basis for [ED] to promulgate" the Rule. *Compare* Final Rule, 90 Fed. Reg. at 48967, *with* Doc No. 99 at 16–17; *see also* Doc No. 94 at 19–20. But whether, as Defendants suggest, the Rule "is consistent with the way the government regulates" *other* entities under *other* statutes, Doc No. 99 at 16, is irrelevant to whether Congress authorized ED under *this* statute. It has not. *King v. Burwell*, 576 U.S. 473 (2015), cited by Defendants, *see* Doc No. 99 at 14–15,

---

[5] In a footnote, Defendants claim that ED has the "discretion to fashion . . . exemptions" to the PSLF Statute "consistent with the statutory purposes." Doc No. 99 at 15 n.2 (quoting *Waterkeeper All. v. EPA*, 853 F.3d 527, 534 (D.C. Cir. 2017)). It does not. Their source for that asserted authority is a stray comment in *Waterkeeper* describing what did *not* apply in that case. And Courts emphatically reject agencies' efforts to create exceptions to statutory mandates— particularly those intended "to give effect to the broader congressional intent." *Sierra Club v. EPA*, 294 F.3d 155, 161 (D.C. Cir. 2002) ("The most reliable guide to congressional intent is the legislation the Congress enacted."); *see also* Doc No. 94 at 13 n.7 (collecting cases).

[6] The other two regulations cited by Defendants, 20 U.S.C. §§ 3441(a)(2)(C), 3471(a), are not rulemaking statutes at all; they governed the 1979 transition from the Department of Health, Education, and Welfare to ED. *See* Doc No. 99 at 12–13; Pub. L. 96-88 §§ 301, 411.

11

confirms this point. There, the Supreme Court cautioned that "[i]t is especially unlikely that Congress would have delegated" a key decision about health insurance "to the *IRS*, which has no expertise in crafting health insurance policy of this sort"—just as here, ED has no "expertise" in policing various criminal laws. *King*¸ 576 U.S. at 486; Doc No. 94 at 19–20.

Defendants assert that the First Circuit's decisions limiting an agency's authority to narrow statutes do not apply here because the "Rule does not add or remove any categories." Doc No. 99 at 15; *see* Doc No. 94 at 13–14. But in Defendants' own words, the "objective" of the Rule is to "exclude employers" from PSLF, Doc No. 99 at 17, who would otherwise be eligible under the statute. In *Santana* and *Lopez-Soto*, the First Circuit rejected interpretations that would have likewise imposed exclusions absent from the statutes' text. *See Santana v. Holder*, 731 F.3d 50 (1st Cir. 2013); *see also Lopez-Soto v. Hawayek*, 175 F.3d 170 (1st Cir. 1999). Defendants offer no plausible way to distinguish those cases. Finally, Defendants appear to claim that the basic tenet of administrative law—that an "agency literally has no power to act unless and until Congress confers power upon it"—does not "appl[y]" in this case. Doc No. 99 at 13 (quoting *City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020)). But this stricture applies in every case about agency action, and it resolves this one: ED has no power to promulgate the Rule because Congress did not confer that power upon it.

## B.  The Rule is Arbitrary and Capricious.

As the States' opening brief explains, Doc No. 94 at 21–34, the Final Rule is arbitrary and capricious for the following reasons: (1) there is no rational connection between the Rule and Defendants' purported justification; (2) the Rule's terms are vague and unsupported; (3) the Rule is so ambiguous that employers will not know their legal obligations; (4) ED failed to account for reliance interests; and (5) the Rule inexplicably targets state employers while ignoring federal

12

employers. Rather than meaningfully addressing any of these arguments, Defendants largely reiterate the language in the Final Rule and Preamble, in a conclusory manner without citation to authority. Each of Defendants' responses is unpersuasive and only serves to confirm the arbitrary and capricious nature of the Rule.

First, in response to the States' argument that Defendants' rationale for promulgating the Final Rule—to protect taxpayer dollars by limiting PSLF eligibility only to employers engaged in "lawful conduct"—has no logical connection to the Rule itself, Defendants offer little more than lengthy citations to the Preamble. *See, e.g.*, Doc No. 99 at 19–20, 22–23. They describe the "connection between the Rule's objective and its direction" as "plain." *Id.* at 19. But as the States have explained, the rationale is far from plain. The Rule is devoid of a single fact in the record demonstrating that any PSLF-eligible employers may actually be operating with a "substantial illegal purpose." It utterly fails to justify why its decision to include only six narrow, politically-charged categories of supposedly illegal conduct—including conduct which is legal in many states, *see supra* I.—supports the Rule's stated rationale of protecting taxpayers. Defendants do not, and cannot, articulate any meaningful defense to these flaws, either of which is fatal to the Rule. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) (An "agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.") (cleaned up); *see also Can. Ass'n of Petroleum Producers v. FERC*, 254 F.3d 289, 299 (D.C. Cir. 2001) ("The Commission's failure to respond meaningfully to [raised challenges] . . . renders its decision . . . arbitrary and capricious.") (cleaned up).

Defendants proceed to argue that their justifications for the Rule are adequate because "the agency appropriately relies on its experience in exercising its judgment." Doc No. 99 at 21. But as

13

discussed *supra* II.2., defining and assessing the supposed "illegality" of an employer's conduct is not the type of judgment that Congress intended ED to exercise. *See State Farm*, 463 U.S. at 43 (decision is arbitrary and capricious when agency "has relied on factors which Congress has not intended it to consider"). In fact, ED utterly lacks experience in making the types of determinations of illegality called for by this Rule. For example, ED has no expertise in determining whether anti-terrorism laws have been violated. Nor does ED have experience in evaluating whether child trafficking has occurred. Defendants' reliance on *State Farm* for the notion that "[i]t is not infrequent that the available data does not settle a regulatory issue[,] and the agency must then exercise its judgment in moving from the facts and probabilities on the record to a policy conclusion" is therefore irrelevant and unavailing. *See* Doc No. 99 at 21. As discussed above, the administrative record to the Final Rule includes no relevant "facts" or "probabilities" as to the likelihood of employers operating with a "substantial illegal purpose."

Defendants' only effort to respond to the States' argument that the Final Rule is transparently pretextual is similarly flippant. Citing to *Mobil Oil Expl. & Producing S.E. Inc. v. United Distrib. Cos*., 498 U.S. 211, 231 (1991), Defendants state that their focus on six specific categories of purported illegality, including support for immigrants, gender affirming care, diversity, equity and inclusion initiatives, and political protest, is justifiable because "the agency is permitted to deal incrementally with bigger problems," Doc No. 99 at 18. However, the rationale in *Mobil Oil* is plainly distinguishable. In that case, the Supreme Court reversed an order of the Court of Appeals for the Fifth Circuit that "chided the [Federal Energy Regulatory Commission] for failing to seize the opportunity to resolve" one issue concerning natural gas pricing without simultaneously addressing others. *Mobil Oil*, 498 U.S. at 221. The Supreme Court concluded that where the agency was "already addressing" the problem highlighted by the Court of Appeals in

14

another, ongoing proceeding, *id.* at 220, the agency "need not solve every problem before it in the same proceeding" where multiple such proceedings were in progress, *id.* at 231 (citing *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543–44). This is not a multiple rulemaking case. Defendants affirmatively chose *this* Rule to definitively address what they purport to view as a significant problem. *See* Final Rule, 90 Fed. Reg. at 48967 ("[T]he rule will *ensure* that the Department is not indirectly subsidizing employers engaged in activities that have a substantial illegal purpose[.]") (emphasis added). They simply cannot point to a reasonable explanation in the record as to why they chose *these* six categories. *See Littlefield v. U.S. Dep't of the Interior*, 85 F.4th 635, 643 (1st Cir. 2023) (the court "must conduct a searching examination to ensure that the agency's decision is reasonably supported by the administrative record").

The lack of rationale is unsurprising where, as discussed extensively in the States' Motion, *see* Doc No. 94 at 23–25, the true purpose of the Rule is to target and chill politically disfavored conduct. Because there is no "valid, stated rationale" for the Rule's construction, Doc No. 99 at 18, this Court can conclude that it is pretextual and therefore unlawful. *See Saget v. Trump*, 375 F. Supp. 3d 280, 361 (E.D.N.Y. 2019) ("[A] court cannot sustain agency action founded on a pretextual or sham justification that conceals the true 'basis' for the decision.").

Second, the States argue that the Rule's terms are vague and unsupported because they are undefined and sweepingly broad and create new standards, the result of which is to include punishment of lawful conduct. *See* Doc No. 94 at 27–31. In response, Defendants state that the "Final Rule makes clear that it does not create new interpretations" and "relies on existing findings of unlawful activity by courts or other regulators where appropriate." Doc No. 99 at 22 (cleaned up). This argument is flawed for two reasons. First, despite Defendants' assurance that they will "defer to the judgments of State courts in determining what constitutes unlawful activity *within*

15

*the jurisdiction where the conduct occurs*," Doc No. 99 at 22, the Rule itself also provides Defendants with virtually unfettered discretion to revoke PSLF eligibility based on their own determination that an employer has violated *federal* law. *See* 34 C.F.R. § 685.219(i)(1)(ii).[7] As the States explained, this Administration takes novel and expansive interpretations as to the meaning of the federal laws at issue in this Rule, *see* Doc No. 94 at 24–25; *supra* II.2, leaving employers with little clarity and potentially shifting standards as to whether they may be targeted for enforcement. Second, the States have demonstrated that the Rule *does*, in fact, create new interpretations of law that ED is plainly not empowered to make. For example, although the Rule adopts the definition of "terrorism" in 18 U.S.C. § 2331, it fails to offer any definition of what constitutes "supporting" terrorism—a term also undefined in 18 U.S.C. § 2331. Final Rule, 90 Fed. Reg. at 48983. Although federal law already criminalizes the provision of material support to terrorists and designated foreign terrorist organizations, 18 U.S.C. § 2339A–B, the Rule inexplicably does not incorporate these existing statutes into its definition of "supporting."

In addition, nowhere in Defendants' Opposition do they address the States' arguments that the terms of the Final Rule will chill *lawful* conduct. *See* Doc No. 94 at 23, 25, 27, 31. Defendants state that "[o]rganizations that abide by Federal law and the laws of the State in which they operate will not be subject to potential loss of eligibility[,]" Doc No. 99 at 20 (quoting Final Rule, 90 Fed. Reg. at 48973), and that the Rule imposes "defined parameters" to "help the Department avoid arbitrary enforcement of the rule," Doc No. 99 at 21 (quoting Final Rule, 90 Fed. Reg. at 48977). However, these conclusory statements do nothing to address the States' argument that the standards and terms set out in the Final Rule create confusion about what it means to abide by federal and

---

[7] All citations to the Rule referring to provisions of the PSLF Regulation cite to the provision of the C.F.R. where the Rule will be codified upon its effective date.

16

state law, particularly in light of the numerous efforts by this Administration to advance unprecedented theories of illegality as to the Plaintiff States' conduct. *See supra* I. Accordingly, the Rule as constructed not only may lead to arbitrary enforcement, but will certainly chill *lawful* activity for fear of wrongfully being excluded from the PSLF program.

Third, Defendants' response to the States' argument that the Rule is so ambiguous that employers cannot be expected to understand their legal obligations is entirely conclusory. *See* Doc No. 99 at 23 ("[T]he PSLF Final Rule is clear in its articulation of the standards and process by which the Department will enforce the Rule."). Defendants simply quote the Preamble seven times over, arguing that it represents a "reasoned approach." *Id.* at 23–24. They cannot defend the Rule's shifting and ambiguous evidentiary standards, *see* Doc No. 94 at 32, lack of defined procedures or notice requirements, *id.*, or failure to define how ED will determine what and how much conduct constitutes a "substantial illegal purpose," *id.* at 32–33. Defendants' assurances that ED will employ an "unbiased adjudicator" is cold comfort where the Rule itself fails to explain *how*, *when*, and *what* that person will be adjudicating. Because the Final Rule is so ambiguous, it presents an intolerable risk of arbitrary enforcement and is arbitrary and capricious for this reason as well.

Fourth, regarding the States' argument that Defendants failed to consider or address the significant reliance interests impaired by the Rule, Defendants state that "[t]he PSLF Final Rule adequately addresses . . . reliance interests" where it "establishes a process by which organizations may regain eligibility, including an expedited mechanism." Doc No. 99 at 20. Defendants call the Final Rule a "calibrated approach" in balancing reliance, Doc No. 99 at 21, but ignore the States' arguments that the Final Rule does not provide any requirements regarding the process for employers facing ineligibility determinations under this Rule. The Rule sets forth no requirements for timing or substance of the notice, nor does it set out requirements for the timeframe or form of

17

an employer's response, nor procedures ED must follow in conducting its review and issuing its decision. Doc No. 94 at 32. Moreover, considerable damage will already be done to employers who are stripped of eligibility arbitrarily, even if they are ultimately able to regain their status. Such an outcome could be devastating to employers' ability to recruit and retain employees.

Fifth and lastly, in response to the States' argument that the Final Rule excludes Federal employers from scrutiny without any justification, Defendants' only response is that "nothing in the Rule carves out or exempts Federal employers." Doc No. 99 at 24. But Defendants provide no explanation whatsoever as to why the Final Rule "assume[s] that Federal agencies will comply with the law and do[es] not expect a reduction in forgiveness for federal employees," without extending a similar assumption to other government employers. Final Rule, 90 Fed. Reg. at 48994. Defendants may quibble with whether this constitutes an "exemption," *per se*—but the disparity in assumptions is striking and unsupported by any evidence. *See Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 422 F. Supp. 2d 1115, 1122 (N.D. Cal. 2006) (agency rule was arbitrary and capricious where it "relied on assumptions that had no factual support in the record"). In addition, where the States raise the issue that an entire government body could lose PSLF eligibility because of the actions of a few employees due to the use of shared employment identification numbers (E.I.N.), Defendants contend that although this framework might be "imperfect," an imperfection of this kind "does not render that decision arbitrary or capricious." Doc No. 99 at 24. Far beyond "imperfect," this standard in the Final Rule creates an irrational and punishing effect on an entire government body for no discernable reason, making it plainly arbitrary and capricious.

## III.    The Final Rule Should Be Vacated.

Because the Final Rule is contrary to law, in excess of Defendants' statutory authority, and arbitrary and capricious, it should be vacated. 5 U.S.C. § 706(2). Defendants' argument that vacatur

is not "appropriate," Doc No. 99 at 26–28, runs counter to First Circuit precedent and federal courts' "overwhelming consensus on this issue." *Ass'n of Am. Universities v. Dep't of Def.*, 806 F. Supp. 3d 79, 123 (D. Mass. 2025). As Defendants acknowledge, the First Circuit has recognized vacatur as an available APA remedy, Doc No. 99 at 27 n. 3 (citing *Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, 145 F.4th 39, 50 (1st Cir. 2025)), and it has approved that remedy repeatedly. *See Gailius v. I.N.S.*, 147 F.3d 34, 47 (1st Cir. 1998); *Harrington v. Chao*, 280 F.3d 50, 60 (1st Cir. 2002) (collecting cases). Indeed, the "normal remedy" when an agency rule violates the APA is "vacatur of the rule and its applicability to all who would have been subject to it." *Mass. v. Nat'l Institutes of Health*, 770 F. Supp. 3d 277, 329 (D. Mass. 2025) (collecting cases). Defendants' contrary view that vacatur is not generally available is "'fairly radical and inconsistent with'" federal courts' longstanding practice. *Dep't of Def.*, 806 F. Supp. at 123 (quoting Transcript of Oral Argument at 35, *United States v. Texas*, 599 U.S. 670 (2023) (No. 22-58) (Roberts, C.J.)).

Defendants' assertion that relief "should apply only to the named Plaintiffs in this case," Doc No. 99 at 28, "fundamentally misunderstands vacatur as a remedy." *Dep't of Def.*, 806 F. Supp. 3d at 121; *see also Rhode Island v. Trump*, 810 F. Supp. 3d 283, 311 (D.R.I. 2025). Unlike an injunction, which acts upon a party and governs that party's conduct, vacatur generally acts upon the agency action itself. *Dep't of Def.*, 806 F. Supp. 3d at 122.

Next, against the law of this Circuit and overwhelming weight of authority, Defendants erroneously suggest that the "set aside" language of APA section 706(2) does not authorize vacatur. Doc No. 99 at 27. But the plain text of the APA authorizes a court to "hold unlawful and set aside agency action," including "an agency rule." 5 U.S.C. §§ 551(13); 706(2). And courts' power to vacate an unlawful rule has always been understood to be derived from the explicit text of the APA. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 826 (2024)

19

(Kavanaugh, J., concurring) ("The Federal Government and the federal courts have long understood § 706(2) to authorize vacatur of unlawful agency rules"); *see Nat'l Institutes of Health*, 145 S. Ct. at 2661 (Barrett, J., concurring) ("Plaintiffs frequently seek vacatur of internal agency guidance"); *see also* Mila Sohoni, *The Past and Future of Universal Vacatur*, 133 Yale L.J. 2305, 2313, 2323 (2024). Defendants misplace their reliance on Justice Gorsuch's concurrence in *United States v. Texas*. Doc No. 99 at 26–27. As Justice Gorsuch acknowledged, he was merely "raising questions" regarding vacatur of rules and drew distinctions between vacatur and nationwide injunctions. 599 U.S. 670, 701–02 (Gorsuch, J., concurring). Defendants' reliance on *Trump v. CASA, Inc.* is likewise inapposite. Doc No. 99 at 27. *CASA* explicitly declined to extend its common law-based reasoning about universal injunctions to the issue of vacatur under the APA. *Trump v. CASA, Inc.*, 606 U.S. at 847 n.10 ("Nothing we say today resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action.").

Because the APA authorizes vacatur, and the Final Rule is unlawful under the APA, the Final Rule should be vacated. Further, as Defendants do not contest, the Court should declare the Rule unlawful upon granting Plaintiffs' motion for summary judgment. Doc No. 94 at 34.

## CONCLUSION

For the foregoing reasons, the Plaintiff States respectfully request that the Court grant their motion for summary judgment; vacate the Rule; enter a declaratory judgment declaring the Rule unlawful; deny Defendants' cross-motion to dismiss or, in the alternative, for summary judgment; and award such other relief as this Court may deem just and proper.[8]

---

[8] Plaintiff States includes their instrumentalities and subdivisions.

20

Date: April 6, 2026                                    Respectfully Submitted,


**ANDREA JOY CAMPBELL**                    **LETITIA JAMES**
  Attorney General of Massachusetts           Attorney General of New York

By: */s/ Victoria Roytenberg*               By: */s/ Jessica Ranucci*
Victoria Roytenberg, BBO No. 685283        Jessica Ranucci*
  *Assistant Attorney General*                *Special Counsel*
Michael N. Turi, BBO No. 706205            Shanna Tallarico*
  *Deputy Chief, Consumer Protection*         *Assistant Attorney General*
  *Division*                                28 Liberty Street
Yael Shavit, BBO No. 695333                New York, NY 10005
  *Chief, Consumer Protection Division*     (929) 736-3392
Office of the Attorney General             jessica.ranucci@ag.ny.gov
1 Ashburton Pl.                            shanna.tallarico@ag.ny.gov
Boston, MA 02108
(617) 963-2387
victoria.roytenberg@mass.gov               *Attorneys for the State of New York*
michael.turi@mass.gov
yael.shavit@mass.gov


*Attorneys for the Commonwealth of*
*Massachusetts*



**PHILIP J. WEISER**                        **ROB BONTA**
  Attorney General of Colorado                Attorney General for the State of California

By: */s/ Martha U. Fulford*                 By: */s/ Caroline E. Wilson*
Martha Upton Fulford*                      Nicklas A. Akers, BBO No. 671415
  *Assistant Deputy Attorney General*         *Senior Assistant Attorney General*
Sam Wolter*                                Bernard A. Eskandari*
  *Assistant Attorney General*                *Supervising Deputy Attorney General*
Colorado Department of Law                 Daniel A. Osborn*
1300 Broadway, #10                         Caroline E. Wilson*
Denver, CO 80203                             *Deputy Attorneys General*
720-508-6000                               1300 I Street
Martha.fulford@coag.gov                    Sacramento, CA 95814
Samuel.wolter@coag.gov                     Nicklas.Akers@doj.ca.gov
                                           Bernard.Eskandari@doj.ca.gov
                                           Daniel.Osborn@doj.ca.gov
*Attorneys for the State of Colorado*       Callie.Wilson@doj.ca.gov


                                           *Attorneys for the People of the State of*


21

*California*

**KRISTIN K. MAYES**
  Attorney General of Arizona

By: */s/ Kathryn E. Boughton*
Kathryn E. Boughton*
  *Assistant Attorney General*
Office of the Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Kathryn.Boughton@azag.gov
ACL@azag.gov

*Attorney for the State of Arizona*


**KATHLEEN JENNINGS**
  Attorney General of the State of Delaware

By: */s/ Vanessa L. Kassab*
Ian R. Liston*
  *Director of Impact Litigation*
Vanessa L. Kassab*
  *Deputy Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Attorneys for the State of Delaware*


**ANNE E. LOPEZ**
  Attorney General for the State of Hawai'i

By: */s/ Kaliko'onālani D. Fernandes*
David D. Day*
  *Special Assistant to the Attorney General*
Kaliko'onālani D. Fernandes*
  *Solicitor General*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360

**WILLIAM TONG**
  Attorney General of Connecticut

By: */s/ Michael K. Skold*
Michael K. Skold*
  *Solicitor General*
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Michael.skold@ct.gov

*Attorney for the State of Connecticut*


**BRIAN L. SCHWALB**
  Attorney General for the District of Columbia

By: */s/ Lindsay Marks*
Lindsay Marks*
  *Assistant Attorney General*
  *Public Advocacy Division*
Office of the Attorney General
for the District of Columbia
400 6th Street, N.W., 10th Floor
Washington, D.C. 20001
(202) 724-6649
lindsay.marks@dc.gov

*Attorney for the District of Columbia*


**KWAME RAOUL**
  Attorney General of Illinois

By: */s/ Katharine Roller*
Katharine Roller*
  *Complex Litigation Counsel*
Sarah J. Gallo*
  *Ethics Unit Supervisor*
Office of the Illinois Attorney General
115 LaSalle Street
Chicago, IL 60603

david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawai'i*


**AARON M. FREY**
  Attorney General for the State of Maine


By: */s/ Christina M. Moylan*
Christina M. Moylan*
  *Assistant Attorney General*
Office of the Attorney General
6 State House Station
Augusta, ME  04333-0006
Tel.: 207-626-8800
Fax: 207-287-3145
christina.moylan@maine.gov


*Attorney for the State of Maine*



**DANA NESSEL**
  Attorney General of Michigan


By: */s/ Neil Giovanatti*
Neil Giovanatti*
Daniel Ping*
  *Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
PingD@michigan.gov


*Attorneys for the State of Michigan*



**AARON D. FORD**
  Attorney General of Nevada


By: */s/ K. Brunetti Ireland*
K. Brunetti Ireland*
  *Chief of Special Litigation*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100

(773) 519-1842
Katharine.roller@ilag.gov
Sarah.gallo@ilag.gov


*Attorneys for the State of Illinois*


**ANTHONY G. BROWN**
  Attorney General of Maryland


By: */s/ Keith M. Jamieson*
Keith M. Jamieson*
  *Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
(410) 576-6960
kjamieson@oag.state.md.us


*Attorney for the State of Maryland*



**KEITH ELLISON**
  Attorney General of Minnesota


By: */s/ Adam Welle*
Adam Welle*
  *Assistant Attorney General*
445 Minnesota Street, Suite 800
St. Paul, MN 55101
(651) 757-1425
Adam.welle@ag.state.mn.us


*Attorney for the State of Minnesota*



**JENNIFER DAVENPORT**
  Acting Attorney General of New Jersey


By: */s/ Andrew H. Yang*
Andrew H. Yang**
  *Deputy Attorney General*
Office of the Attorney General
124 Halsey Street, 5th Floor

23

Las Vegas, NV 89119
kireland@ag.nv.gov

*Attorney for the State of Nevada*


**RAÚL TORREZ**
  Attorney General of the State of New Mexico

By: */s/ Olivia den Dulk*
Olivia den Dulk*
  *Assistant Attorney General*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
505-270-4332
odendulk@nmdoj.gov

*Attorney for the State of New Mexico*


**PETER F. NERONHA**
  Attorney General of Rhode Island

By: */s/ Chandana Pandurangi*
Chandana Pandurangi*
  *Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2806
cpandurangi@riag.ri.gov

*Attorney for the State of Rhode Island*


**JAY JONES**
Attorney General of Virginia
By: */s/ Tillman J. Breckenridge*
Tillman J. Breckenridge*
  *Solicitor General*
Mikaela A. Phillips*
  *Assistant Solicitor General*

Newark, NJ 07101
(609) 696-5278
Andrew.Yang@law.njoag.gov

*Attorneys for the State of New Jersey*


**DAN RAYFIELD**
  Attorney General of Oregon

By: */s/ Leanne Hartmann*
Leanne Hartmann, BBO #667852
  *Senior Assistant Attorney General*
Kate E. Morrow*
  *Assistant Attorney General*
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Kate.E.Morrow@doj.oregon.gov

*Attorneys for the State of Oregon*


**CHARITY R. CLARK**
  Attorney General for the State of Vermont

By: */s/ Ryan P. Kane*
Ryan P. Kane*
  *Deputy Solicitor General*
109 State Street
Montpelier, VT 05609
(802) 828-2153
Ryan.kane@vermont.gov

*Attorney for the State of Vermont*


**NICHOLAS W. BROWN**
  Attorney General of Washington
By: */s/ Erica R. Franklin*
Erica R. Franklin*
Julia Doyle*
  *Assistant Attorneys General*
800 Fifth Avenue, Suite 2000

24

Office of the Attorney General
202 N. 9th Street
Richmond, Virginia 23219
Tel: (804) 786-2071
Fax: (804) 786-1991
solicitorgeneral@oag.state.va.us
mphillips@oag.state.va.us

*Attorneys for the Commonwealth of Virginia*

Seattle, WA 98104-3188
206-464-7744
Erica.Franklin@atg.wa.gov
Julie.Doyle@atg.wa.gov

*Attorneys for the State of Washington*


**JOSHUA L. KAUL**
  Attorney General of Wisconsin
By: */s/ Amanda Quester*
Amanda Quester**
  *Assistant Attorney General*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8690
Amy.Quester@wisdoj.gov

*Attorney for Plaintiff State of Wisconsin*



* *Admitted pro hac vice*
** *Pro hac vice forthcoming*

25

### Certificate of Service and Rule 7.1 Certification

On April 6, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, District of Massachusetts, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).  I further certify that counsel for Plaintiffs conferred with counsel for Defendants, who have indicated they plan to oppose this motion. *See* Doc No. 82.

/s/ *Victoria Roytenberg*

Victoria Roytenberg

Counsel for Plaintiff Commonwealth of Massachusetts

26